UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KAHALA FRANCHISE CORPORATION, a Delaware corporation, and<br><br>Plaintiff,<br><br>v.<br><br>ALBERT DRAKE, a resident of the State of Tennessee,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. _____<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

This is an action for breach of contract, trademark infringement, trade dress infringement, and unfair competition arising from, among other things, Defendant Albert Drake's breach of his Franchise Agreement based on the failure to pay royalty and advertising fees owed to Plaintiff Kahala Franchise Corporation. Kahala seeks monetary, injunctive, and other relief against Defendant for the reasons set forth below.

### Parties

1. Plaintiff Kahala Franchise Corporation is a Delaware corporation with its principal place of business at 9311 E. Via De Ventura, Scottsdale, Arizona. It is engaged in the

business of franchising independent businesspersons to operate, among other things, Great Steak & Potato Company businesses. Franchisees are licensed to use the Great Steak trademarks, name, and trade dress and to operate under the Great Steak system, which involves the production, merchandising, and sale of sandwiches and related products utilizing a specially designed building with special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks and identification.

2. Defendant Albert Drake is a natural person and, upon information and belief, is a resident of the State of Tennessee. Defendant was the owner of a Great Steak restaurant located at the Prime Outlets, 30 Outlet Village Boulevard, Space F-130, Lebanon, Tennessee, pursuant to a Franchise Agreement entered into with Kahala on June 30, 2008.

## Jurisdiction and Venue

3. This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a) & 1121; and 28 U.S.C. §§ 1331, 1332(a), 1338, & 1367(a). The amount in controversy exceeds $75,000, exclusive of interest and costs.

4. The Court has *in personam* jurisdiction over Defendant because he conducts business in this district, is a resident of this district, and the events giving rise to the claims occurred in this district.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## Background Facts

### The Great Steak System

6. Kahala is the franchisor of the Great Steak franchise system.

7. It is also the owner of the trademarks, copyrights, service marks, trade dress, and

trade name "The Great Steak & Potato Company," and related marks. Kahala licenses others to use these marks and trade name and, along with its predecessors, has used them continuously to identify its Great Steak restaurants and the products associated with those restaurants.

8. The Great Steak trademarks and trade name are distinctive and famous and have acquired secondary meaning.

9. They are also utilized in interstate commerce.

10. The Great Steak marks have been widely advertised and promoted by Kahala over the years. Kahala and its Great Steak franchisees have spent significant amounts of money on advertising and promoting the Great Steak marks.

11. Kahala and its Great Steak franchisees currently operate over 200 Great Steak restaurants in the United States. Great Steak restaurants feature the Great Steak distinctive trademarks and trade dress, including the unique color scheme and lettering style. In the twenty-seven years since the system began, millions of consumers have been served in Great Steak restaurants.

12. As a result of the extensive sales, advertising, and promotion of items identified by the Great Steak marks, the public has come to know and recognize the Great Steak marks, and to associate them exclusively with the products and services offered by Kahala and its Great Steak franchisees.

13. The Great Steak marks are among the best and widely known trademarks in the United States today, and are assets of inestimable value to Kahala, representing and embodying the considerable goodwill and favorable reputation of Kahala.

## Defendant's Obligations Under the Franchise Agreement

14. Under the Franchise Agreement, Defendant agreed to use the Great Steak proprietary marks, including, but not limited to, the trademarks, logos, emblems, trade dress and other indicia of origin, "in accordance with the System and . . . standards and specifications" of Kahala. (Franchise Agreement § 6.1(d).) He also agreed to use the "Proprietary Marks licensed by this Agreement solely in the manner prescribed" by Kahala. (*Id.* § 6.3(c).)

15. Defendant agreed that any failure to pay, perform, observe or comply with any of his duties or obligations under the Franchise Agreement would constitute a default subject to injunctive relief. (*Id.* §§ 14.1(b); 14.9.)

16. Defendant agreed that he would not do or perform, directly or indirectly, any act that would impair or prejudice the goodwill associated with Great Steak's proprietary marks. (*Id.* §§ 6.2(a); 6.2(d).)

17. Under the Franchise Agreement, Defendant agreed as follows:

   (a) to pay Kahala a royalty fee of the greater of 6.0 percent of the gross sales of the business or $400 (*id.* § 5.2);

   (b) to pay Kahala an advertising fee of 1.0 percent of the gross sales of the business (*id.* § 5.3);

   (c) to accurately report each week gross sales for the preceding calendar week, at which time all fees required to be paid were to be remitted (*id.* § 5.2);

   (d) to pay interest on any unpaid royalty or advertising fees due under the Franchise Agreement (*id.* § 5.14);

   (e) to pay a late fee of $100 per report if he failed to submit any financial statements, forms, reports or records required to be provided under the Franchise

4

Agreement by its due date, including weekly gross sales for calculating royalty and advertising fees (*id.*);

 (f) to pay a $50.00 late fee for each late payment (*id.*); and

 (g) to establish and maintain a bank account and electronic fund transfer information for that account for royalty and advertising fees payable to Kahala (*id.* § 5.7.).

18. Under the Franchise Agreement, if Defendant fails to pay royalty and advertising fees in a timely manner, he is entitled to a written notice and seven (7) days to cure his financial default. (*Id.* § 14.2(b).) If he fails to cure the financial default within the time provided, Kahala has the right to immediately terminate the Franchise Agreement. (*Id.* §§ 14.1(b); 14.2(b); 14.5).

19. Under the Franchise Agreement, Defendant agreed that upon termination his right to use the Great Steak proprietary marks and system would cease and he would promptly comply with his post-termination obligations, including, but not limited to, ceasing to use the Great Steak marks, name, and trade dress. (*Id.* §§ 6.2(c), 14.5(a), (b).)

20. Upon termination, Defendant agreed that he would promptly pay Kahala any damages incurred by it as a result of his default(s) and attorneys' fees, if Kahala is the prevailing party in any subsequent litigation. (*Id.* §§ 14.5(a); 16.10.)

### Sublease

21. Kahala is the tenant of the restaurant's premises pursuant to a lease agreement dated August 30, 2006, entered into with Prime Outlets at Lebanon Limited Partnership. Defendant subleased the premises from Kahala pursuant to a sublease agreement dated June 30, 2008. The sublease agreement gives Kahala the right to terminate if Defendant materially breaches any agreement between the parties, including the Franchise Agreement. (Sublease §

5

VIII..) Section VIII of the sublease also gives Kahala the right, upon termination, to enter the premises and repossess it and expel Defendant. (*Id.*)

### DEFENDANT'S DEFAULTS

22. As set forth above, Defendant agreed to pay royalty and advertising fees on a weekly basis, as well as interest on any unpaid royalty or advertising fee due under the Franchise Agreement. He also agreed to maintain a valid bank account and electronic fund transfer information for the debits of royalty and advertising fees payable to Kahala.

23. Defendant, however, failed to pay these fees as required and failed to maintain a bank account and electronic fund transfer information. On February 19, 2009, Kahala served Defendant with a notice to cure advising him that he was in default of the Franchise Agreement for failing to pay royalty and advertising fees and for failing to maintain a valid bank account and electronic fund transfer information. At the time, Defendant owed Kahala $6,267.64 in fees. In accordance with the Franchise Agreement, Kahala provided Defendant with seven (7) days in which to cure the defaults.

24. Defendant, however, failed to cure the defaults within the time provided in the notice. Pursuant to the Franchise Agreement, Kahala sent Defendant a notice dated August 24, 2009, terminating the Franchise Agreement and sublease and demanding that he cease using the Great Steak trade name and proprietary marks immediately upon receipt of the notice. The termination notice also demanded that he comply with the Franchise Agreement's post-termination obligations. Because he refused to accept any mail from Kahala, Defendant was hand-delivered the notice of termination on September 22, 2009.

25. Despite receiving the termination notice, Defendant continued to operate the restaurant using the Great Steak proprietary marks. In early November 2009, Kahala served

Defendant with a cease and desist notice demanding that he comply with the post-termination obligations of the Franchise Agreement and cease using the Great Steak proprietary marks and name. He refused to comply.

26. On December 11, 2009, Kahala again sent Defendant a cease and desist letter giving him a December 18, 2009 deadline to cease operating the restaurant and his infringing activities and to pay all monies owed.

27. Despite repeated notices Defendant is still operating the restaurant using the Great Steak name, trademarks, and trade dress.

28. Defendant subleases the premises of the restaurant from Kahala and is required under the sublease to pay rent. As of January 21, 2010, Defendant owes Kahala $31,471.96, representing unpaid royalties, advertising fees, rent, and other charges, including interest and late fees.

## COUNT I
### (Breach of Contract)

29. The allegations of paragraphs 1 through 28 are hereby incorporated by reference.

30. The conduct described herein constitutes breaches of the above-described terms of the Franchise Agreement.

31. These breaches constitute good cause for terminating the Franchise Agreement.

32. As a result of Defendant's actions, Kahala has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT II
### (Breach of Sublease)

33. The allegations of paragraphs 1 through 32 are hereby incorporated by reference.

34. The conduct described herein constitutes breaches of the above-described terms of the Sublease.

35. These breaches constitute good cause for terminating the Sublease.

36. As a result of Defendant's actions, Kahala has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT III
### (Trademark Infringement)

37. The allegations of paragraphs 1 through 36 are hereby incorporated by reference.

38. The use in commerce of the Great Steak trademarks and trade name by Defendant outside the scope of the Franchise Agreement and without Kahala's consent is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendant are licensed, franchised, sponsored, authorized, or otherwise approved by Kahala. Such unauthorized use of the Great Steak trademarks and trade name infringes Kahala's exclusive rights in its trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114 and applicable state law.

39. The acts of Defendant were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

40. As a result of the actions of Defendant, Kahala has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT IV
### (Unfair Competition)

41. The allegations of paragraphs 1 through 40 are hereby incorporated by reference.

42. The use in commerce of the Great Steak trademarks and trade name by Defendant outside the scope of the Franchise Agreement and without the consent of Kahala is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services, or commercial activities by another person. Such unauthorized use of the Great Steak trademarks and trade names violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a) and applicable state law.

43. The acts of Defendant were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

44. As a result of the actions of Defendant, Kahala has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT V
### (Trade Dress Infringement)

45. The allegations of paragraphs 1 through 44 are hereby incorporated by reference.

46. Defendant's restaurant is identified by signs, exterior appearance, packaging, containers, and other items on which the words "The Great Steak & Potato Company" appear in the same lettering style and in the same distinctive color scheme as Kahala uses for the Great Steak restaurants operated by its licensees.

47. The use by Defendant of trade dress that is identical to Kahala's trade dress outside the scope of the Franchise Agreement constitutes a false designation of the origin of Defendant's restaurant, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of the restaurant with Great Steak

restaurants operated by licensees of Kahala. Such adoption of Kahala's trade dress violates § 43 of the Lanham Act, 15 U.S.C. § 1125, and the common law.

48. The acts of Defendant were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

49. As a result of the actions of Defendant, Kahala has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

**Prayer for Relief**

WHEREFORE, Kahala prays that this Court:

a. Enter a declaratory judgment that the conduct of Defendant violates the terms of the Franchise Agreement and Sublease, and constitutes grounds for terminating the Franchise Agreement and Sublease;

b. Enter a judgment in favor of Kahala for the damages incurred by it as a result of the breaches of the Franchise Agreement and Sublease by Defendant;

c. Enter an injunctive order ratifying and enforcing the termination of the Franchise Agreement and Sublease as of the effective date of the notice of termination, or as otherwise provided by applicable law;

d. Enjoin Defendant and all those acting in concert with him from infringing upon the Great Steak trademarks, trade dress, and trade name and from otherwise engaging in unfair competition with Kahala;

e. Enter an injunctive order directing Defendant to comply with his post-termination obligations under any contract with Kahala, including, but not limited to, the Franchise Agreement and Sublease;

f.      Award Kahala judgment against Defendant for the damages it has sustained and the profits Defendant has derived as a result of his actions, and that such damages be assessed in a separate accounting procedure and trebled in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

g.      Award Kahala prejudgment interest in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

h.      Award Kahala such exemplary or punitive damages as are deemed appropriate because of the willful, intentional, and malicious nature of the conduct of Defendant;

i.      Award Kahala its costs and attorneys' fees incurred in connection with this action pursuant to contract and § 35 of the Lanham Act, 15 U.S.C. § 1117; and

j.      Award Kahala such other relief as this Court may deem just and proper.

Respectfully submitted,

_____
Peter Sales, Esq.
Eric W. Smith, Esq.
BRADLEY ARANT BOULT CUMMINGS, LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
Telephone: (615) 252-2365
Facsimile: (615) 252-6365
Email: psales@babc.com
Email: esmith@babc.com

David E. Worthen, Esq.
Iris Figueroa Rosario, Esq.
GRAY, PLANT, MOOTY, MOOTY
  & BENNETT, P.A.
2600 Virginia Avenue, N.W. - Suite 1111
Washington, D.C. 20037
Telephone: (202) 295-2200
Facsimile: (202) 295-2250
Email: david.worthen@gpmlaw.com
Email: iris.rosario@gpmlaw.com

Dated: January 22, 2010

*Attorneys for Plaintiff*